1  BENNETT J. LEE (Bar No. 230482)
   ANDREW VAN ORNUM (Bar No. 214040)
2  ANDREW J. RAMOS (Bar No. 267313)
   WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
3  333 Bush Street, Suite 1500
   San Francisco, CA  94104
4  Telephone:    415-623-7000
   Facsimile:    415-623-7001
5  Emails:       blee@wthf.com
                 avanornu@wthf.com
6                aramos@wthf.com

7  Attorneys for Plaintiff
   ARCH INSURANCE COMPANY
8

9              **UNITED STATES DISTRICT COURT**

10     **EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION**

11

12 | ARCH INSURANCE COMPANY, a          | Case No. _____
   | Missouri corporation,              |
13 |                                    | **ARCH INSURANCE COMPANY'S**
   |                Plaintiff,          | **COMPLAINT FOR:**
14 |                                    |
   | v.                                 | **1) BREACH OF CONTRACT**
15 |                                    | **2) SPECIFIC PERFORMANCE**
   | SIERRA EQUIPMENT RENTAL, INC., a   | **3) PROMISSORY ESTOPPEL**
16 | California corporation; MELVIN R.  | **4) INJUNCTIVE RELIEF/QUIA TIMET**
   | WEIR, an individual; CAROLYN S.    | **5) CONSPIRACY TO COMMIT FRAUD**
17 | SCAROLA, as trustee of the Dry Creek | **6) NEGLIGENT MISREPRESENTATION**
   | Ranches Trust; CAROLYN S. SCAROLA, | **7) INTENTIONAL**
18 | an individual,                     |    **MISREPRESENTATION**
   |                                    | **8) DECLARATORY RELIEF**
19 |                Defendants.         |

20

21         Plaintiff Arch Insurance Company ("Arch") alleges as follows:

22                    **JURISDICTION AND VENUE**

23         1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in

24  controversy exceeds $75,000, exclusive of interest and costs, and diversity exists among the

25  parties.

26         2.    Venue is proper in the United States District Court for the Eastern District of

27  California, Sacramento Division.  Pursuant to the parties' indemnity agreement, defendants

28  consented to the jurisdiction of any court of competent jurisdiction, including the jurisdiction of

                                    - 1 -

1   any state or federal court where one or more of the defendants is domiciled or doing business, at
2   the sole discretion of Arch.  Defendants Sierra Equipment Rental, Inc. ("Principal") and Melvin
3   R. Weir are residents of Glenn, County of Glenn, California.  Further, all of the defendants are
4   residents of California, and a substantial portion of the surety bonds issued by Arch were for
5   improvements to be constructed in Shasta County, California, thus making venue proper under
6   subdivisions (a)(1) and (a)(2) of 28 U.S.C. § 1391.

7   <u>**THE PARTIES**</u>

8   3.   Arch is a corporation organized and existing under the laws of the State of
9   Missouri, with its principal place of business in New York.  Arch is an admitted surety insurer in
10  the State of California, among other jurisdictions, in the course of which it issues contract surety
11  bonds, among other bonds, and lines of insurance.

12  4.   Arch is informed and believes and thereon alleges that Principal is a corporation
13  organized and existing under the laws of the State of Nevada, with its principal place of business
14  in Glenn, California.

15  5.   Arch is informed and believes and thereon alleges that defendant Melvin R. Weir
16  is a natural person residing in the City of Glenn, County of Glenn, California.

17  6.   Arch is informed and believes and thereon alleges that defendant Carolyn S.
18  Scarola is a natural person residing in the City of Greenbrae, County of Marin, California.

19  7.   Arch is informed and believes and thereon alleges that Scarola is the duly-
20  appointed trustee of the Dry Creek Ranches Trust (the "Trust").  Scarola in her individual
21  capacity shall be referred to as "Scarola" and in her trustee capacity as "Trustee."

22  8.   Collectively, defendants Principal, Melvin R. Weir, and Carolyn S. Scarola, in her
23  trustee capacity, shall be referred to as "Indemnitors."

24  <u>**GENERAL ALLEGATIONS**</u>

25  9.   On or before August 12, 2005, Principal and Indemnitors, and each of them,
26  approached Arch to request that Arch issue various construction-related surety bonds on behalf of
27  Principal in connection with certain construction contracts.

28  ///

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 2 -

ARCH INSURANCE COMPANY'S COMPLAINT

10.     Between December 2009 and January 2011, Arch issued performance and payment bonds for Principal in connection with the following bonded contracts:

| BOND NUMBER | CONTRACT | OBLIGEE |
|---|---|---|
| SU1102883 | Lake County, Route 53 (the "Route 53 Project") | State of California, Department of Transportation ("Caltrans") |
| SU1036087 | Shasta County Bridge Replacement (the "Tutor-Saliba Project") | Tutor-Saliba |

11.     The above-referenced bonds shall collectively be referred to as the "Bonds" and the above-referenced contracts shall collectively be referred to as the "Bonded Contracts."

12.     Arch issued the Bonds to (1) guarantee the payment of laborers, materialmen, and other proper bond claimants in accordance with California law, and (2) guarantee the performance of Principal's contract obligations with respect to the Bonded Contracts with the Bonds' obligees.

13.     As partial consideration for issuing the Bonds on behalf of Principal, on or about August 12, 2005, Indemnitors, and each of them, executed and delivered to Arch a General Indemnity Agreement ("GIA").   A true and correct copy of the GIA is attached hereto as **Exhibit A** and is hereby incorporated by reference herein as if set forth in full.

14.     Pursuant to the GIA, all of the Indemnitors, and each of them, are liable to Arch for the amounts set forth herein.

15.     Pursuant to the GIA, Indemnitors, among other promises, agreed to jointly and severally indemnify Arch against any and all loss, including, but not limited to:

Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that [Arch] may sustain or incur as a result of executing any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with [the GIA].  Loss includes but is not limited to:  (a.)  sums posted by [Arch] as a reserve for the payment of potential losses and/or expenses, (b.)  all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing [the GIA], (c.)  all accrued and unpaid premiums owing to [Arch] for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by [Arch] for the Principal or Indemnitors, (d.)  funds

ARCH INSURANCE COMPANY'S COMPLAINT

advanced by [Arch] to the Principal in connection with a Bonded Contract, and (e.) all other amounts payable to [Arch] according to the terms and conditions of [the GIA] or any other agreement between [Arch] and Principal or Indemnitors.

16.    The GIA provides that a "default" under the GIA is, among other things:

An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium when due, (b.) forfeit, breach, abandon, default, or be declared in default on any Bonded Contract, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) fail to honor any obligation under this Agreement, [. . .] (j.) violate any other written agreement with [Arch].

17.    Between December 2011 and February 2012, a number of Principal's subcontractors and suppliers on the Bonded Contracts asserted that Principal failed to pay for labor, material, and equipment. As of February 23, 2012, Arch is informed and believes and thereon alleges that CalTrans has received at least 25 stop notices relating to the Route 53 Project totaling $2,055,288.58.

18.    Further, during the same time period, a number of Principal's subcontractors and suppliers on the Bonded Contracts made claims on the Bonds to Arch totaling at least $1,461,983.83.

19.    On January 31, 2012, CalTrans notified Principal that it was in default for the Route 53 Project for, among other things, alleged failure to provide an adequate workforce and for allegedly letting its insurance expire on January 27, 2011. CalTrans's letter further notified it would start the process of terminating Principal's control of the Route 53 Project within 5 calendar days if the defaults were not cured.

20.    In February 2012, Principal represented to Arch that it is unable to perform the obligations secured by the Bonds without the requested financial accommodations and/or assistance from Arch. Principal requested to borrow $3 million from Arch for the purpose of paying Principal's obligations to various subcontractors and suppliers of labor, material, and service used in performance of the Bonded Contracts.

21.    On or about February 17, 2012, and in accordance with its rights under the GIA, Arch sent a letter to Principal and Indemnitors demanding that they deposit collateral with Arch

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 4 -

in the amount of $1,461,918.83, which amount Arch reasonably determined was the amount of claims Arch had received on the Bonds as of the date of the letter (the "Demand Letter").  Arch also demanded, among other things, that Principal and Indemnitors procure the discharge of Arch from the Bonds and provide evidence regarding the same, and that Principal and Indemnitors provide access to certain books and records pursuant to Arch's rights under the GIA.  Arch demanded that Principal and Indemnitors comply with the above-described demands by February 24, 2012.

22.   On February 22, 2012, CalTrans's Resident Engineer for the Route 53 Project sent Principal a letter stating, among other things, that Principal's inability to complete the project has resulted in Principal's default and CalTrans intended to terminate Principal's control of the Route 53 Project if all defaults are not cured within 5 calendar days.

23.   On February 29, 2012, Principal's representative sent a letter to Tutor-Saliba's Senior Project Manager stating, among other things, that effective March 1, 2012, Principal would no longer perform any of its obligations under the Bonded Contracts.

24.   On March 2, 2012, CalTrans's Chief for its Division of Construction sent Principal a letter providing, among other things, notice under Section 10253 of the Public Contract Code that if Principal cannot secure the necessary resources to complete the Route 53 Project within five working days after receipt of the letter, Principal would be terminated from the project.

25.   On March 2, 2012, Principal's President sent a reply letter to CalTrans's stating, among other things, Principal will not cure the defaults CalTrans identified in its previous letters and that Principal "hereby accepts the notice and [. . .] will not dispute the termination of control or termination of the contract."  A true and correct copy of Principal's letter is attached hereto as **Exhibit B**.

26.   Arch is informed and believes that Principal failed to cure the alleged defaults declared by CalTrans for the Route 53 Project.

27.   Arch is informed and believes that Principal has reputed its contractual obligations for the Tutor-Saliba Project and intends to default on said obligations.

28.   Principal and Indemnitors, and each of them, have failed and refused, and continue

to fail and refuse, to deposit collateral in any amount with Arch or to obtain Arch's discharge from the Bonds.

29.    Principal and Indemnitors, and each of them, have failed and refused, and continue to fail and refuse, to provide Arch with unrestricted access to books and records pertaining to Principal and Indemnitors' financial conditions.

30.    Principal and Indemnitors, and each of them, have failed and refused, and continue to fail and refuse, to otherwise perform all of their obligations under the GIA.

31.    Arch has incurred, and will continue to incur, losses, including additional liability, losses, costs, expenses, and fees, as a result of executing the Bonds and as a result of the failure of Principal and Indemnitors to perform or comply with the GIA.

32.    Arch has incurred, and will continue to incur, costs and expenses incurred in connection with investigating, paying or litigating claims on the Bonds, and enforcing the GIA, including but not limited to, legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses.

### FIRST CLAIM FOR RELIEF

**(Breach of Contract against Principal and Indemnitors)**

33.    Arch hereby incorporates each and every one of the above allegations by reference as though fully set forth herein.

34.    Principal and Indemnitors, and each of them, requested that Arch issue the Bonds on behalf of Principal and the Indemnitors.  Among other allegations, Arch is informed and believes that Weir owns Principal and Weir is a beneficiary of the Trust.  Based on the representation by the Indemnitors that they would indemnify Arch, and otherwise would perform their obligations under the GIA, and that the assets of the Trust would be pledged to Arch to satisfy all obligations under the GIA, Arch agreed to issue the Bonds.

35.    As partial consideration for Arch's issuance of the Bonds, Principal and Indemnitors, and each of them, jointly and severally agreed under the express terms of the GIA that each of them shall, among other things:

a.    Indemnify Arch against all losses, claims, demands, expenses, and costs

- 6 -

arising out of the Bonds;

    b.    Deposit collateral with Arch immediately upon demand by Arch in an amount equal to the amount of any claim or claims or other liabilities asserted against Arch as a result of issuing the Bonds;

    c.    Provide unrestricted access to books and records pertaining to Principal and Indemnitors' financial condition;

    d.    Cause Arch's obligations under the Bonds to be exonerated upon demand by Arch;

    e.    Otherwise perform all obligations in the GIA.

36.    Arch has demanded that Principal and Indemnitors, and each of them, indemnify Arch for all losses arising out of the Bonds, including fees, costs, and expenses Arch has incurred and will incur by reason of having issued the Bonds.

37.    Arch has demanded that Principal and Indemnitors, and each of them, deposit collateral with Arch in an amount equal to the amount of all claims Arch has received against the Bonds.

38.    Arch has demanded that Principal and Indemnitors provide unrestricted access to books and records pertaining to Principal and Indemnitors' financial condition.

39.    Arch has demanded that Indemnitors cause any and all of Arch's obligations under the Bonds to be exonerated.

40.    Despite Arch's demand to the Principal and Indemnitors to perform under the GIA, Principal and Indemnitors, and each of them, have failed and refused to, among other things:

    a.    Indemnify and hold harmless Arch against all losses arising out of the Bonds;

    b.    Deposit collateral with Arch upon demand in an amount equal to the amount of any claim or claims or other liabilities asserted against Arch as a result of issuing the Bonds;

    c.    Provide unrestricted access to books and records pertaining to Principal

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

ARCH INSURANCE COMPANY'S COMPLAINT

1  and Indemnitors' financial condition;

2      d.    Cause Arch's obligations under the Bonds to be exonerated;

3      e.    Otherwise perform all obligations pursuant to the GIA.

4      41.    Arch performed all of its duties and obligations under the GIA except as for those

5  duties and obligations excused by Principal and Indemnitors' breaches.

6      42.    Arch's investigation and defense of claims asserted against the Bonds has caused

7  and will continue to cause Arch to incur costs, expenses, and attorneys' fees.

8      43.    As a direct and proximate result of Arch having issued the Bonds on behalf of

9  Principal and Indemnitors, and as a result of Principal and Indemnitors' failure to comply with

10  their obligations under the GIA, Arch has incurred, and will continue to incur, losses, including

11  additional liability, losses, costs, expenses, and fees, as a result of executing the Bonds and as a

12  result of the failure of Principal and Indemnitors to perform or comply with the GIA.

13      44.    As a direct and proximate result of Arch having issued the Bonds on behalf of

14  Principal and Indemnitors, and as a result of Principal and Indemnitors' failure to comply with

15  their obligations under the GIA, Arch has incurred, and will continue to incur, losses, costs and

16  expenses incurred in connection with investigating, paying and/or litigating claims on the Bonds,

17  and enforcing the GIA, including but not limited to, loss payments, legal fees and expenses,

18  professional and consulting fees, technical and expert witness fees and expenses.

19      45.    Principal's and Indemnitors' material breaches of the GIA were a substantial factor

20  in causing Arch damage in an amount to be proved at trial, but in no event less than $75,000.

21      WHEREFORE, Arch prays for judgment against Principal and Indemnitors, jointly and

22  severally, as set forth below.

23      **SECOND CLAIM FOR RELIEF**

24      **(Specific Performance of GIA against Principal and Indemnitors)**

25      46.    Arch hereby incorporates each and every one of the above allegations by reference

26  as though fully set forth herein.

27      47.    Principal and Indemnitors, and each of them, requested that Arch issue the Bonds

28  on behalf of Principal and the Indemnitors.  Among other allegations, Arch is informed and

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

1    believes that Weir owns Principal and Weir is a beneficiary of the Trust.   Based on the

2    representation by the Indemnitors that they would indemnify Arch, and otherwise would perform

3    their obligations under the GIA, and that the assets of the Trust would be pledged to Arch to

4    satisfy all obligations under the GIA, Arch agreed to issue the Bonds.

5         48.    As partial consideration for Arch's issuance of the Bonds, Principal and

6    Indemnitors, and each of them, jointly and severally agreed under the express terms of the GIA

7    that each of them shall, among other things:

8              a.    Indemnify and hold harmless Arch against all losses arising out of the

9                    Bonds;

10             b.    Deposit collateral with Arch upon demand by Arch in an amount equal to

11                   the amount of any claim or claims or other liabilities asserted against Arch

12                   as a result of issuing the Bonds;

13             c.    Provide unrestricted access to books and records pertaining to Principal

14                   and Indemnitors' financial condition;

15             d.    Cause Arch's obligations under the Bonds to be exonerated upon demand

16                   by Arch;

17             e.    Otherwise perform all obligations pursuant to the GIA.

18        49.    Under the GIA, funds paid or payable under Bonded Contracts were designated

19   trust funds for payment for labor, materials, supplies and equipment furnished for the Bonded

20   Contracts.  Arch is informed and believes that Principal and Indemnitors have received trust funds

21   but have failed to pay said funds to persons contributing labor, materials, supplies and equipment

22   to the Bonded Contracts.

23        50.    Arch has demanded that Principal and Indemnitors, and each of them, indemnify

24   Arch for all losses arising out of the Bonds, including fees, costs, and expenses Arch has incurred

25   and will incur by reason of having issued the Bonds.

26        51.    Arch has demanded that Principal and Indemnitors, and each of them, deposit

27   collateral with Arch in an amount equal to the amount of all claims Arch has received against the

28   Bonds.

52. Arch has demanded that Principal and Indemnitors provide unrestricted access to books and records pertaining to Principal and Indemnitors' financial condition.

53. Arch has demanded that Indemnitors cause Arch's obligations under the Bonds to be exonerated.

54. Despite Arch's demand to the Principal and Indemnitors to perform under the GIA, Principal and Indemnitors, and each of them, have failed and refused to, among other things:

      a. Indemnify and hold harmless Arch against all losses arising out of the Bonds;

      b. Deposit collateral with Arch upon demand in an amount equal to the amount of any claim or claims or other liabilities asserted against Arch as a result of issuing the Bonds;

      c. Provide unrestricted access to books and records pertaining to Principal and Indemnitors' financial condition;

      d. Cause Arch's obligations under the Bonds to be exonerated;

      e. Otherwise perform all obligations pursuant to the GIA.

55. Arch performed all of its duties and obligations under the GIA except as for those duties and obligations excused by Principal and Indemnitors' breaches.

56. Arch is informed and believes and thereon alleges that Principal and Indemnitors will continue to attempt to avoid their obligations under the GIA to indemnify and hold Arch harmless by transferring and conveying their assets to satisfy obligations other than those covered by the Bonds and the GIA.

57. Arch has no adequate remedy at law for the injuries currently being suffered. If Principal and Indemnitors are not required to perform their obligations under the GIA, Arch is informed and believes and thereon alleges that Principal and Indemnitors will render themselves insolvent, to the prejudice and irreparable harm of Arch. Further, Arch is exposed to continued liability to the extent that Principal and Indemnitors continue to fail to exonerate Arch from the Bonds.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 10 -

1    WHEREFORE, Arch prays for judgment against Principal and Indemnitors, jointly and
2    severally, as set forth below.

### THIRD CLAIM FOR RELIEF

**(Promissory Estoppel against Principal and Indemnitors)**

5    58.    Arch hereby incorporates each and every one of the above allegations by reference
6    as though fully set forth herein.

7    59.    Principal and Indemnitors, and each of them, requested that Arch issue the Bonds
8    on behalf of Principal and the Indemnitors.   Among other allegations, Arch is informed and
9    believes that Weir owns Principal and Weir is a beneficiary of the Trust.   Based on the
10   representation by the Indemnitors that they would indemnify Arch, and otherwise would perform
11   their obligations under the GIA, and that the assets of the Trust would be pledged to Arch to
12   satisfy all obligations under the GIA, Arch agreed to issue the Bonds.

13   60.    As partial consideration for Arch's issuance of the Bonds, Principal and
14   Indemnitors, and each of them, jointly and severally agreed under the express terms of the GIA
15   that each of them shall, among other things:

16         a.    Indemnify and hold harmless Arch against all losses arising out of the
17               Bonds;
18         b.    Deposit collateral with Arch upon demand by Arch in an amount equal to
19               the amount of any claim or claims or other liabilities asserted against Arch
20               as a result of issuing the Bonds;
21         c.    Provide unrestricted access to books and records pertaining to Principal
22               and Indemnitors' financial condition;
23         d.    Cause Arch's obligations under the Bonds to be exonerated upon demand
24               by Arch;
25         e.    Otherwise perform all obligations pursuant to the GIA.

26   61.    Principal and Indemnitors made the above-referenced promises in order to induce
27   Arch to issue the Bonds on behalf of Principal and Indemnitors.

28   62.    Arch reasonably relied on Principal and Indemnitors' promises in issuing the

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 11 -

ARCH INSURANCE COMPANY'S COMPLAINT

1    Bonds.

2         63.    As a direct consequence of Arch's reasonable reliance on Principal and

3    Indemnitors' promises, Arch has suffered substantial detriment.

4         64.    Principal's and Indemnitors' representations were a substantial factor in causing

5    Arch damage in an amount to be proved at trial, but in no event less than $75,000.

6         WHEREFORE, Arch prays for judgment against Principal and Indemnitors, jointly and

7    severally, as set forth below.

8                         **FOURTH CLAIM FOR RELIEF**

9         **(Injunctive Relief/Quia Timet against Principal and Indemnitors)**

10        65.    Arch hereby incorporates each and every one of the above allegations by reference

11   as though fully set forth herein.

12        66.    Principal and Indemnitors, and each of them, are obligated under the GIA and the

13   doctrine of Quia Timet to post collateral security to Arch for all losses, expenses, fees and costs

14   that Arch may incur as a consequence of the Bonds issued on behalf of Principal and Indemnitors,

15   and each of them.

16        67.    Under the GIA, funds paid or payable under Bonded Contracts were designated

17   trust funds for payment for labor, materials, supplies and equipment furnished for the Bonded

18   Contracts.  Arch is informed and believes that Principal and Indemnitors have received trust funds

19   but have failed to pay said funds to persons contributing labor, materials, supplies and equipment

20   to the Bonded Contracts.

21        68.    Despite Arch's demand to the Principal and Indemnitors to perform under the

22   GIA, Principal and Indemnitors, and each of them, have failed and refused to, among other

23   things:

24             a.    Indemnify and hold harmless Arch against all losses arising out of the

25                   Bonds;

26             b.    Deposit collateral with Arch upon demand in an amount equal to the

27                   amount of any claim or claims or other liabilities asserted against Arch as a

28                   result of issuing the Bonds;

Watt, Tieder,
Hoffar &
Fitzgerald, L.L.P.
Attorneys At Law

- 12 -

|   |   |   |
|---|---|---|
| 1 | c. | Provide unrestricted access to books and records pertaining to Principal |
| 2 |   | and Indemnitors' financial condition; |
| 3 | d. | Cause Arch's obligations under the Bonds to be exonerated; |
| 4 | e. | Otherwise perform all obligations pursuant to the GIA. |

69.   Arch believes that Principal and Indemnitors have and will attempt to avoid their obligations to exonerate, indemnify, and keep indemnified Arch under the terms of the GIA by transferring and/or conveying their assets to satisfy obligations other than those covered by the Bonds or otherwise included within the scope of the GIA, or liquidating their assets and avoiding the jurisdiction of this Court.

70.   Arch performed all of its duties and obligations under the GIA except as for those duties and obligations excused by Principal and Indemnitors' breaches.

71.   Arch has no adequate remedy at law for the injuries currently being suffered. If Principal and Indemnitors are not required to perform their obligations under the GIA, Arch is informed and believes and thereon alleges that Principal and Indemnitors will render themselves insolvent, to the prejudice and irreparable harm of Arch. Further, Arch is exposed to continued liability to the extent that Principal and Indemnitors continue to fail to exonerate Arch from the Bonds.

72.   As a proximate result of the conduct of Principal and Indemnitors, and each of them, Arch has been or will be damaged so long as Principal and Indemnitors are able to circumvent their obligations to Arch under the GIA by transferring trust fund assets. The full amount of this damage is in excess of $75,000.

73.   Arch is entitled to receive a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Principal and Indemnitors, and each of them, as well as their agents, servants, employees and all persons acting under, in concert with, or for them: (a) to establish a joint control account for all contract funds paid on contracts covered by the Bonds, pursuant to the GIA, (b) preventing Principal and Indemnitors from transferring trust fund assets, including from Principal and Indemnitors' banks.

74.   The harm Arch will incur if injunctive relief is not granted will greatly exceed any

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

1    harm that Principal and Indemnitors might sustain as a result of its issuance.

2        WHEREFORE, Arch prays for judgment against Principal and Indemnitors as set forth

3    below.

## FIFTH CLAIM FOR RELIEF

### (Conspiracy to Commit Fraud against Principal, Indemnitors, and Scarola)

6        75.    Arch hereby incorporates each and every one of the above allegations by reference

7    as though fully set forth herein.

8        76.    In executing the GIA, Scarola represented to Arch that Scarola was the duly-

9    appointed trustee of the Trust with power and authority to pledge the Trust's assets for all

10   obligations under the GIA.  Arch is informed and believes that Principal and Indemnitors had

11   knowledge of Scarola's representation.

12       77.    Arch is informed and believes and thereon alleges that Principal, Indemnitors, and

13   Scarola intentionally misrepresented that Scarola had power and authority to pledge the Trust's

14   assets for all obligations under the GIA.  Principals, Indemnitors, and Scarola knew that the

15   representation was false when they made it, or they made the representation recklessly and

16   without regard for its truth.

17       78.    Arch is informed and believes and thereon alleges that Principal, Indemnitors, and

18   Scarola, and each of them, were aware that the representation by Scarola to Arch would induce

19   Arch to issue the Bonds on behalf of Principal.  Indemnitors have a pecuniary interest in Principal

20   receiving the Bonds as Mr. Weir is a beneficiary of the Trust and is an officer and investor in

21   Principal.  Arch is informed and believes that Principal and Indemnitors knew that Scarola and

22   Indemnitors planned to fraudulently induce Arch to execute the GIA and issue the Bonds based

23   on the intentional misrepresentation that Scarola was the duly-appointed trustee of the Trust with

24   power and authority to pledge the Trust's assets for all obligations under the GIA.

25       79.    Arch is informed and believes and thereon alleges that Principal, Indemnitors, and

26   Scarola, and each of them, agreed and intended that the fraud be committed.

27       80.    Arch entered into the GIA with Principals, Indemnitors, and Scarola in good faith

28   and for valuable consideration.  Arch did not have actual knowledge that Scarola was exceeding

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 14 -

1    her powers or was improperly exercising them.

2        81.    Principal, Indemnitors, and Scarola intended that Arch rely on the representations

3    made to Arch.

4        82.    Arch reasonably relied on their representations and issued the Bonds based in part

5    on the false representations.

6        83.    Arch was harmed by the false representations of Principal, Indemnitors, and

7    Scarola.

8        84.    Arch's reliance on the false representation of Principal, Indemnitors, and Scarola

9    was a substantial factor in causing its harm, in that but for the false representation, Arch would

10   not have issued the Bonds.

11       85.    Arch is informed and believes and thereon alleges that the fraudulent

12   representations and concealment made by Principal and Indemnitors were made with oppression,

13   fraud, and malice within the meaning of California Civil Code section 3294 and with a conscious

14   disregard of Arch's rights.

15       WHEREFORE, Arch prays for judgment against Principal and Indemnitors as set forth

16   below.

17                          **SIXTH CLAIM FOR RELIEF**

18       **(Negligent Misrepresentation against Principal, Indemnitors, and Scarola)**

19       86.    Arch hereby incorporates each and every one of the above allegations by reference

20   as though fully set forth herein.

21       87.    Scarola represented to Arch that Scarola was the duly-appointed trustee of the

22   Trust with power and authority to pledge the Trust's assets for all obligations under the GIA.

23   Scarola made that representation in writing on the GIA.

24       88.    Principal, Indemnitors, and Scarola knew that the representation was a material

25   inducement to Arch to agree to issue the Bonds.

26       89.    The Trust alleges that Scarola's representation was false.  In the event the Trust is

27   correct, Arch is informed and believes and thereon alleges that Principal, Indemnitors, and

28   Scarola had no reasonable grounds for believing that Scarola was the duly-appointed trustee of

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 15 -

1    the Trust with power and authority to pledge the Trust's assets for all obligations under the GIA.

2         90.    Arch entered into the GIA with Principals, Indemnitors, and Trust in good faith
3    and for valuable consideration.  Arch did not have actual knowledge that Scarola was exceeding
4    her powers as Trustee or was improperly exercising them.

5         91.    Principal, Indemnitors, and Scarola intended that Arch rely on the representations
6    made to Arch.

7         92.    Arch reasonably relied on their representations and issued the Bonds based in part
8    on the false representations.

9         93.    Arch was harmed by the false representations of Principal, Indemnitors, and
10   Scarola.

11        94.    Arch's reliance on the false representation of Principal, Indemnitors, and Scarola
12   was a substantial factor in causing its harm, in that but for the false representation, Arch would
13   not have issued the Bonds.

14        WHEREFORE, Arch prays for judgment against Principal and Indemnitors as set forth
15   below.

16                        **SEVENTH CLAIM FOR RELIEF**

17                   **(Intentional Misrepresentation against Scarola)**

18        95.    Arch hereby incorporates each and every one of the above allegations by reference
19   as though fully set forth herein.

20        96.    Scarola represented to Arch that Scarola was the duly-appointed trustee of the
21   Trust with power and authority to pledge the Trust's assets for all obligations under the GIA.
22   Scarola made that representation in writing on the GIA.

23        97.    Scarola knew that the representation was a material inducement to Arch to agree to
24   issue the Bonds.

25        98.    The Trust alleges that Scarola's representation was false.  In the event the Trust is
26   correct, Arch is informed and believes that Scarola knew that the representation was false.

27        99.    Arch entered into the GIA with Principals, Indemnitors, and Trust in good faith
28   and for valuable consideration.  Arch did not have actual knowledge that Scarola was exceeding

1    her powers as Trustee or was improperly exercising them.

2        100.   Scarola intended that Arch rely on the representations made to Arch so as to cause

3    Arch to issue the Bonds.

4        101.   Arch reasonably relied on Scarola's representation as to her power and authority to

5    pledge the Trust's assets and issued the Bonds based in part on Scarola's representation.

6        102.   Arch was harmed by the false representations of Scarola, in an amount to be

7    proven at trial.

8        103.   Arch's reliance on the false representation of Scarola was a substantial factor in

9    causing its harm, in that but for the false representation, Arch would not have issued the Bonds.

10       104.   Arch is informed and believes and thereon alleges that the fraudulent

11   representations and concealment made by Scarola were made with oppression, fraud, and malice

12   within the meaning of California Civil Code section 3294 and with a conscious disregard of

13   Arch's rights.

14       WHEREFORE, Arch prays for judgment against Scarola as set forth below.

15                          **EIGHTH CLAIM FOR RELIEF**

16              **(Declaratory Relief against Principal and Indemnitors)**

17       105.   Arch hereby incorporates each and every one of the above allegations by reference

18   as though fully set forth herein.

19       106.   An actual controversy has arisen and now exists between Arch, on one hand, and

20   Principal and Indemnitors, on the other hand, in that Arch contends, and Principal and

21   Indemnitors deny, that pursuant to the GIA, Principal and Indemnitors are obligated to do the

22   following, among other things:

23       a.    Indemnify and hold harmless Arch against all losses arising out of the

24             Bonds;

25       b.    Deposit collateral with Arch in an amount equal to the amount of any claim

26             or claims or other liabilities asserted against Arch as a result of issuing the

27             Bonds;

28       c.    Provide unrestricted access to books and records pertaining to Principal

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 17 -

1    and Indemnitors' financial condition;

2         d.    Cause Arch's obligations under the Bonds to be exonerated;

3         e.    Otherwise perform all obligations pursuant to the GIA.

4         107.    Arch desires a judicial determination of the respective rights and duties of Arch,

5    Principal, and Indemnitors with respect to the GIA.  In particular, Arch desires a declaration that,

6    as a consequence of having executed the GIA, Principal and Indemnitors have all of the

7    obligations referenced above.

8         WHEREFORE, Arch prays for judgment against Principal and Indemnitors as set forth

9    below.

10    **PRAYER**

11         WHEREFORE, Arch prays for judgment as follows:

12    **On the First Cause of Action:**
**Breach of Contract against Principal and Indemnitors**

13    1.    For damages in an amount to be proved at trial, but in no event less than $75,000;

14         and,

15    2.    For reasonable attorneys' fees.

16    

17    **On the Second Cause of Action:**
**Specific Performance against Principal and Indemnitors**

18    1.    For a court order requiring Principal and Indemnitors to specifically perform the

19         following obligations under the GIA:

20         a.    Indemnify Arch for all losses arising out of the Bonds;

21         b.    Deposit collateral with Arch in an amount equal to the amount of any claim

22         or claims or other liabilities asserted against Arch as a result of issuing the

23         Bonds;

24         c.    Provide unrestricted access to books and records pertaining to Principal

25         and Indemnitors' financial condition;

26         d.    Cause Arch's obligations under the Bonds to be exonerated;

27         e.    Otherwise perform all obligations pursuant to the GIA; and,

28

2.      For reasonable attorneys' fees.

**On the Third Cause of Action:**
**Promissory Estoppel against Principal and Indemnitors**

1.      For damages in an amount to be proved at trial, but in no event less than $75,000;
and,

2.      For reasonable attorneys' fees.

**On the Fourth Cause of Action:**
**Injunctive Relief/Quia Timet against Principal and Indemnitors**

1.      For a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Principal and Indemnitors, and each of them, as well as their agents, servants, employees and all persons acting under, in concert with, or for sthem (a) to establish a joint control account for all contract funds paid on contracts covered by the Bonds, pursuant to the GIA, (b) from transferring their trust fund assets, including Principal and Indemnitors' bank.

**On the Fifth Cause of Action:**
**Conspiracy to Commit Fraud against Principal, Indemnitors, and Scarola**

1.      For damages in an amount to be proved at trial, but in no event less than $75,000;
and,

2.      For punitive damages in an amount to be proved at trial.

**On the Sixth Cause of Action:**
**Negligent Misrepresentation against Principal and Indemnitors**

1.      For damages in an amount to be proved at trial, but in no event less than $75,000.

**On the Seventh Cause of Action:**
**Intentional Misrepresentation against Scarola**

1.      For damages in an amount to be proved at trial, but in no event less than $75,000;
and,

2.      For punitive damages in an amount to be proved at trial.

**On the Eighth Cause of Action:**
**Declaratory Relief against Principal and Indemnitors**

1.      For a declaration of the rights of the parties to the GIA as contended by Arch; and,

2.      For reasonable attorneys' fees.

**<u>On all Causes of Action</u>:**

1.      For interest at the legal rate;

2.      For costs of suit herein; and

3.      For such other and further relief as the Court may deem necessary and proper.

Dated: March 12, 2012                     WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.


By:_____/s/ Bennett J. Lee_____
          Bennett J. Lee
          Andrew Van Ornum
          Andrew J. Ramos
          Attorneys for Plaintiff
          ARCH INSURANCE COMPANY

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

ARCH INSURANCE COMPANY'S COMPLAINT

# EXHIBIT A



**Arch** Insurance Company
a member of Arch Insurance Group

# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT (hereinafter called "Agreement") is made by the undersigned Indemnitors in favor of Arch Insurance Company, Arch Reinsurance Company, and any present or future subsidiary or affiliate of Arch Insurance Company, (hereinafter collectively called "Arch"), for the purpose of indemnifying Surety (as herein defined below) for any Bonds (as herein defined below), which Surety may have issued, or may hereafter issue, or on which Surety otherwise becomes surety.

**DEFINITIONS**: The following terms are defined as follows:

**Principal**:Sierra Equipment Rental, Inc. and/or any person whose name is or has been furnished to Surety by any of the Indemnitors, including any of the Indemnitors named or referred to as "Principal" in any bond, undertaking or recognizance. The term "Principal" includes any present or future direct or indirect subsidiary, successor, affiliate or parent of any Indemnitor, including but not limited to partnerships, LLCs, LLPs or other entities, whether owned in whole or in part by any named Indemnitor.

**Indemnitors**: All Persons who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Principal, and acknowledge that Surety would not issue such Bonds without each Indemnitor's agreement to reimburse Surety for all losses arising under the Bonds.

**Surety**: Arch, or any other present or future subsidiary or affiliate of Arch, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Arch. The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

**Persons:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

**Bond:** Any and all bonds, including but not limited to surety bonds, undertakings and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Principal, whether issued prior to or subsequent to the effective date of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process, or otherwise.

**Bonded Contract:** A contract for which Surety issues or has issued a Bond.

**Default:** An instance or condition in which Principal or Indemnitors, or any of them: (a.) fail to pay any Bond premium charge when due, (b.) forfeit, breach, abandon, default or be declared in default on any Bonded Contract, (c.) neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract, (d.) fail to honor any obligation under this Agreement, (e.) institute or have instituted against any or all of them a case under the Bankruptcy Code or similar statute, with respect to any Indemnitor as debtor, or any suit or proceeding alleging that any one of them is insolvent or requesting the appointment of a receiver or trustee for the benefit of creditors, (f.) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work, (g.) make an assignment for the benefit of creditors that in any way impedes the rights of the Surety, (h.) in the case of Indemnitors which are not individuals, dissolve or cease to continue their legal existence, (i.) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted of a felony or are imprisoned, or (j.) violate any other written agreement with Surety.

**Loss**: Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and / or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and / or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors, (d.) funds advanced by Surety to the Principal in connection with a Bonded Contract, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

**IN CONSIDERATION** of the execution of any such Bonds for Principal, from which it is acknowledged the Indemnitors derive a substantial material benefit, and as an inducement to such execution or continuation of suretyship and/or the issuance of Bonds by Surety, the Indemnitors, jointly and severally, agree as follows:

**1. INDEMNITY** - Indemnitors agree to indemnify and hold harmless Surety for any and all Loss sustained or incurred by reason of having executed any and all Bonds. The Indemnitors obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore. In the event of payments by Surety, Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

**2. SURETY'S CONSENT TO CHANGES** - Surety may consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, or may refuse to consent to any such change. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement.

**3. SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principal or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. Surety's declining to issue or execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principal and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety.

**4. POSTING OF COLLATERAL** – Indemnitors agree to deposit with Surety, immediately upon demand by Surety, an amount equal to the greater of (a.) the amount of any reserve established by Surety to cover any actual or potential Loss, or (b.) the amount of any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond. Surety may, in its sole discretion, use any part or all of the collateral in settlement or payment of any Loss or other liability or expense for which the Indemnitors would be required to reimburse Surety under the terms of this Agreement. If Surety permits the Indemnitors to deposit less than the full amount of either (a.) or (b.) herein, Surety may, from time to time, require the Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to the greater of (a.) or (b.) herein. Surety agrees to refund any unused portion of the deposit upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

**5. SURETY'S RIGHTS RE: CLAIMS** - Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

**6. SURETY'S RIGHTS RE: DEFAULT** - In the event of a Default, Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

**7. ASSIGNMENTS** - In the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all sub-contracts and purchase orders let in connection therewith, (b.) all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for purposes of the Bonded Contract(s) including all materials ordered or fabricated for the Bonded Contract(s), (c.) all claims and causes of action against any parties to the Bonded Contract(s) or against third parties relating to the Bonded Contract(s), (d.) any and all sums due, or to become due under the Bonded Contract(s) at or after the time of such Default and (e.) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights required for the performance of the work for which Surety has issued bonds, and expressly authorize Surety to use these property rights as required in Surety's discretion to complete the Bonded Contract(s). In the event of a Default, each of Principal and Indemnitors hereby appoint and designate Surety or it's authorized representative as their respective Attorneys-in-Fact to endorse and sign in the name of Principal or Indemnitor, as payee or otherwise, all documents and all checks, drafts, warrants or other instruments made or issued in connection with the Bonded Contract(s). Surety shall have the right to receive, collect and disburse the proceeds of all such checks, drafts or warrants.

**8. DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

**9. ACCESS TO BOOKS & RECORDS** - Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors agree to provide updated financial statements upon the Surety's request. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder.

**10. INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement.

**11. EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

**12. TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Arch written notice by Registered Mail at least thirty (30) days prior to termination. The termination will not affect Indemnitor's obligations hereunder with respect to any Bonds executed and issued prior to the termination of this Agreement by that Indemnitor. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

**13. EFFECT OF CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to either an LLC or an LLP or any other similar structure which has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status. Indemnitors acknowledge that the Surety relies upon the assets reflected in their financial statements in the issuance of Bonds,

and agree not to dispose of or transfer said assets, except in the ordinary course of business, without the prior, express, written consent of Surety.

**14. NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her principal residence within 30 days of the change of address. Each Indemnitor, which is not an individual, agrees not to change its principal place of business or the state of jurisdiction in which it is incorporated or otherwise organized without also giving Surety 30 days written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees to file a Financing Statement in the new state or jurisdiction.

**15. EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

**16. FILING OF AGREEMENT UNDER THE UCC** - This Agreement shall constitute a Security Agreement and grants to Surety a security interest in all assets, and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. The appearance of Arch's logo on the first page of this Agreement shall constitute its signature hereon. Indemnitors hereby irrevocably appoint and designate Surety or its authorized representative as their respective Attorneys-In-Fact to sign any Financing Statement form which may be required in order to file the same in any jurisdiction or office.

**17. APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Indemnitors admit and acknowledge that any such Bond was executed pursuant to an Indemnitors' request and in reliance on the Indemnitors' representation and promise to execute this Agreement.

**18. PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%.

**19. TRUST FUNDS** - Principal and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of Principal or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such contract, for which Surety would be liable under any Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**20. JURISDICTION** - As to any legal action related to this Agreement, Principal and Indemnitors consent to the jurisdiction of any court of competent jurisdiction, including the jurisdiction of any state or federal court where the Principal or one or more of any of the Indemnitors is domiciled or doing business, at the sole discretion of the Surety. Principal and Indemnitors waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**21. NOTICE OF SERVICE** - Notice of Service made by U. S. Mail or by FAX to the last known address constitutes service whether or not received.

**22. ADDRESS FOR NOTICES** - All notices required to be given by Indemnitors under this Agreement shall be sent by registered mail to Arch Insurance Company, 3 Parkway, Suite 1500, Philadelphia, PA 19102 USA and shall include a copy of this Agreement attached thereto.

**23. WRITING CONSTITUTES THE ENTIRE AGREEMENT** - This Agreement constitutes the entire Agreement among the Principal, Indemnitors and the Surety regarding the rights and obligations of the parties hereto and supersedes any prior agreement between the parties. The parties acknowledge that there are no other agreements or understandings, whether oral or written, that in any way modify, change or vitiate the obligations of this Agreement. This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

IT IS FURTHER UNDERSTOOD AND AGREED that the Indemnitors, and their successors and assigns, are jointly and severally bound by all of the foregoing conditions of this Agreement.

IN TESTIMONY WHEREOF, the Indemnitors, intending to be legally bound hereby, represent that they have read and understood the foregoing provisions and have below set their hands and affixed their seals, as appropriate, this 12th _____ day of August _____ , 2005.

**Witness/ Attest**

Gerrit Albetski
(Name of Witness)

_____
(Name of Witness)

Chris Dempsey
(Name of Witness)

_____
(Name of Witness)

Principal/Indemnitor: Sierra
Equipment Rental, Inc.
By: Melvin R. Weir
Print Name: Melvin R. Weir
Its: President and Secretary
Tax I.D. No.: 88-0298146
Address: P O Box 70250
Richmond  CA  94807

(seal)

Principal/Indemnitor: Melvin R. Weir
By: Melvin R. Weir
Print Name: Melvin R. Weir
Its: Individual Indemnitor & Owner of
Sierra Equipment Rental, Inc.
Tax I.D. No.: 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
Address: 8176 County Road 44
Glenn CA  95943

(seal)

Indemnitor: Dry Creek Ranches Trust
By: Carolyn S. Scarola, Trustee
Print Name: Carolyn S. Scarola
Its: Trustee, with power and authority
to pledge the trust assets for surety
obligations
Tax I.D. No.: N/A
Address: 359 Los Cerros Dr
Greenbrae  CA  94904

(seal)

Indemnitor: _____
By: _____
Print Name: _____
Its: _____
Tax I.D. No.: _____
Address: _____
_____

(seal)

*See Attached
Acknowledgement Certificate.*

**Arch GIA 01-04**                                                                                     **Page 5 of 7**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Marin  } ss.

On 8-16-05 before me, Chris Dempsey
Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared Carolyn Scarola
Name(s) of Signer(s)

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CHRIS DEMPSEY
COMM. #1459823
NOTARY PUBLIC-CALIFORNIA
MARIN COUNTY
My Comm. Expires JANUARY 2, 2008

WITNESS my hand and official seal.

Signature of Notary Public

--- OPTIONAL ---

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of _Marin_ } ss.

On _August 17th, 2005_ before me, _Gerrit Albetski, Notary Public_
   Date                          Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Melvin R. Weir_
                                    Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

> GERRIT J. ALBETSKI
> COMM. #1564312
> NOTARY PUBLIC-CALIFORNIA
> MARIN COUNTY
> My Comm. Expires March 25, 2009

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_GPZ_
Signature of Notary Public

————————— OPTIONAL —————————
Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: _General Indemnity Agreement_

Document Date: _____     Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

> RIGHT THUMBPRINT
> OF SIGNER
> Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of __Marin__ } ss.

On __August 17th, 2005__ before me, __Gerrit Albetski, Notary Public__,
Date                              Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared __Melvin R. Weir__
Name(s) of Signer(s)

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

> GERRIT J. ALBETSKI
> COMM. #1564312
> NOTARY PUBLIC-CALIFORNIA
> MARIN COUNTY
> My Comm. Expires March 25, 2009

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

─────────── OPTIONAL ───────────
Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

### Description of Attached Document

Title or Type of Document: __General Indemnity Agreement__

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT B

Sierra Equipment Rental, Inc.
8176 County Rd 44
Glenn, CA 95943
Phone# (877)503-6300 Fax# (530) 934-2247

March 2, 2012

Mr. Dan Kraft, Resident Engineer
Department of Transportation
1401A Will S. Green Avenue
Colusa, CA. 95932

Re: Contract 01-3986U4

Dear Mr. Kraft,

Sierra Equipment Rental, Inc. is unable to satisfy the notice of termination of control and hereby accepts the notice and we will not dispute termination of control or termination of the contract.

Sierra Equipment Rental, Inc. also understands that by accepting the notice, Sierra Equipment Rental, Inc. will no longer be involved or work on the project.

Respectfully,

Karrie Kindell
President
Sierra Equipment Rental, Inc.