IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCH INSURANCE COMPANY, a Missouri corporation, | |
| Plaintiff, | No. CIV S-12-0617 KJM KJN |
| vs. | |
| SIERRA EQUIPMENT RENTAL, INC., a California corporation, MELVIN R. WEIR, CAROLYN SCAROLA, as trustee of the Dry Creek Ranches Trust, | |
| Defendants. | ORDER |
| / | |

This case was on the court's calendar on November 9, 2012 for hearing of the following motions filed by plaintiff Arch Insurance Company ("Arch"): Motion for Preliminary Injunction against defendants Sierra Equipment Rental Inc. ("Sierra"), Melvin R. Weir and Carolyn Scarola, as trustee of the Dry Creek Ranches Trust ("DCR"); Motion for Temporary Restraining Order against proposed defendants Carolyn Scarola, Karrie Kindell, Roy Lanza and Hust Brothers, Inc. ("Hust") (ECF 58); and Motion for Leave to File a First Amended Complaint and Modify the Pretrial Scheduling Order (ECF 52). Sierra, Weir and Scarola filed an opposition to the Motion for Leave to Amend (ECF 60) but did not submit a written opposition to the Motion for Preliminary Injunction. There was no response filed or appearance made in

1

response to the Motion for Temporary Restraining Order. At hearing, Andrew Ramos appeared for Arch; Kevin Rooney appeared for Sierra and Weir; Bruce Cornelius appeared for Carolyn Scarola individually; and Chris Kuhner appeared for Carolyn Scarola as Dry Creek Ranches Trustee.

For the reasons explained below, the court GRANTS Arch's Motion for Preliminary Injunction and Motion for Leave to File a First Amended Complaint and Modify the Pretrial Scheduling Order, but DENIES Arch's Motion for Temporary Restraining Order without prejudice.

I. Background

Arch's claims arise from its issuance of surety bonds to Sierra for Sierra's contracted construction projects for the State of California Department of Transportation ("CalTrans") and Tutor-Saliba between December 2009 and January 2011. (ECF 2 ¶¶ 9-10.) In its original complaint filed on March 9, 2012, Arch alleged that Sierra, Weir, Scarola,[1] and the Dry Creek Ranch Trust (collectively, "Indemnitors") executed a General Indemnity Agreement ("GIA") promising to indemnify Arch against any losses that Arch might incur from issuing the bonds. On January 31, 2012, Sierra notified Arch that it needed $3 million in financial assistance after defaulting on its project for CalTrans. (ECF 2 ¶¶ 19-20.) In turn, Arch requested that Sierra and Indemnitors deposit $1,461,918.83 in collateral, the amount Arch estimated it had received in claims, discharge Arch from the bonds, and allow Arch to inspect books and records, consistent with the terms of the GIA. (*Id*. ¶ 21.) Arch asserts that Sierra and Indemnitors have not complied with these obligations under the GIA. (*Id*. ¶¶ 28-30.) The court issued an order for a writ of attachment on May 18, 2012 allowing Arch to attach defendants' property in the amount of $1,661,980, which included attorney's fees. (ECF 36.)

---

[1] The original complaint named Scarola as a defendant both as an individual and in her capacity as trustee of the DCR. (ECF 2.) On July 13, 2012, the court dismissed Scarola as an individual without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (ECF 46.)

Through its declarations submitted in support of its Motion for Preliminary Injunction, Arch has established that it provided three surety bonds to Sierra in the amounts of $11,311,521.95, $5,655,760.98 and $6,532,874.00. (Decl. of William Pearce ¶ 6, ECF 59.) Subsequently, Arch paid $3,500,000.00 to CalTrans for the difference between the contracted price and the actual completion price. (*Id*. ¶ 7.) Arch also made numerous payments to various other parties regarding the same project, totaling more than $1,440,840.00. (*Id*. ¶¶ 8-9.) Arch's total losses on its bonds to Sierra are $5,355,243.74. (*Id*. ¶ 10.) Indemnitors were obligated under the GIA to reimburse Arch for these losses. (*Id*. ¶ 11.)

After filing its original complaint, Arch subpoenaed defendants' bank records and discovered the facts on which it bases the present motions. (Decl. of Andrew J. Ramos, ¶¶ 9-11, ECF 54.) Arch's forensic accountant, Mary Lynn Kotansky, reviewed transactions between Sierra and CalTrans. (Decl. of Mary Lynn Kotansky ¶¶ 3-4, ECF 58-6.) CalTrans paid Sierra a total of $2,783,907.13 for the construction project. (*Id*. ¶ 5.) Kotansky was unable to locate deposits into Sierra's Bank of Marin account corresponding to $2,019,492.57 of those payments from CalTrans.[2] (*Id*. ¶ 8.) Kotansky also determined that on the same date that Sierra received $465,355.15 from CalTrans in Sierra's account, Sierra President Karrie Kindell wrote a check from the same account to Weir personally for $300,000.00, which Kotansky concluded came from the CalTrans payment. (*Id*. ¶¶ 9-10; Decl. of Andrew J. Ramos ¶¶ 12-15, ECF 54; Exs. C-E, ECF 57.) Arch provided evidence that Weir withdrew $100,000 from Sierra's Bank of America account after Arch requested that Sierra and Indemnitors pay collateral owed under the GIA, (Decl. of Andrew J. Ramos ¶¶ 18-19, Exs. F-G, ECF 57), and that Scarola withdrew $100,000 from DCR's account after Arch filed its initial complaint (Decl. of Andrew J. Ramos ¶ 21, Ex. H, ECF 57) and an additional $25,000 from DCR's account after the court's issuance of

---

[2] At the hearing, Sierra argued that further review of Sierra's Bank of Marin accounts would reveal that the funds were used legitimately. As Sierra did not submit a written opposition to the Motion for Preliminary Injunction, or any evidence in support, the court disregards this argument. Local Rule 230.

3

a writ of attachment (Decl. of Andrew J. Ramos ¶ 22, Exs. I, K, ECF 57). Arch also asserts that Roy Lanza, a co-owner of DCR's property in Butte County, withdrew $165,000 from DCR's account with Gold Country Bank after Arch requested that Indemnitors pay collateral. (Decl. of Andrew J. Ramos ¶¶ 26-29, Ex. L-N, ECF 54.)

Additionally, Arch provided evidence that DCR received $268,331.00 from the sale of its cattle in September 2012, which was paid to Weir and Hust Brothers, Inc. ("Hust"). (*Id.* ¶¶ 32-35.) The Bill of Sale for the cattle represented that they belonged to Hust, and Weir told the livestock auction he wanted the sale to proceed in Hust's name, but the sale proceeded in DCR's name because a brand inspector for the State of California Department of Food and Agriculture determined the cattle were DCR's. (Decl. of Cris Carlson, ¶¶ 5-8, ECF 58-4.)

Defendants contest that DCR received funds from the cattle sale and asserts that DCR's funds "were used to pay [DCR] expenses; including but not limited to walnut orchard maintenance, feed for cattle, rent for trucks, watering for the properties and other necessary expenses." (Decl. of Carolyn S. Scarola ¶¶ 5-6, ECF 61.)

II. <u>Motion to Amend</u>

In its original complaint filed on March 9, 2012, Arch alleged claims for (1) breach of contract against Sierra and Indemnitors, (2) promissory estoppel against Sierra and Indemnitors, (3) a claim for conspiracy to commit fraud against Sierra, Indemnitors, and Scarola, (4) a claim for negligent misrepresentation against Sierra, Indemnitors, and Scarola, and (5) a claim for intentional misrepresentation against Scarola. (ECF 2.) Arch sought (1) declaratory relief against Sierra and Indemnitors, (2) damages of at least $75,000, plus attorneys' fees, for each of Arch's claims for breach of contract, promissory estoppel, conspiracy to commit fraud, negligent misrepresentation, and intentional representation, (3) specific performance of the GIA by Sierra and Indemnitors, and (4) injunctive relief/quia timet against Sierra and Indemnitors. (*Id.*)

/////

Arch's proposed First Amended Complaint ("FAC") omits the third, fourth, or fifth causes of action of Arch's original complaint and includes several new claims, including claims against new defendants. (ECF 55.) The proposed FAC includes (1) a claim for conversion against Indemnitors, (2) a claim for conspiracy to convert against Indemnitors and Kindell, (3) a claim for conversion against DCR Trust, Weir, Scarola, Lanza and Hust, (4) a claim for fraud against Indemnitors, (5) a claim for violation of the Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code § 3439, *et seq.* against all defendants, and (6) a claim for conspiracy to violate the Uniform Fraudulent Transfer Act against Indemnitors, Scarola, Kindell, Lanza and Hust. (*Id.*) In addition to its original requests for relief, Arch requests damages of at least $75,000, plus attorneys' fees, for each of Arch's additional claims and injunctive relief under its claims for conversion and violations of UFTA. (*Id.*)

Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give leave [to amend its pleading] when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion [regarding granting or denying leave to amend] 'a court must be guided by the underlying purpose of Rule 15 -- to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). However, "the liberality in granting leave to amend is subject to several limitations. Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Properties*, 866 F.2d at 1160 (internal citations omitted). In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (quoting *Leighton*, 833 F.2d at 186 n.3).

/////

Arch argues it should be allowed to file a FAC because none of the factors enumerated in *Ascon Properties* applies. The court agrees. There will be no undue prejudice to the defendants because discovery is ongoing, thirteen months remain before the current trial date, and Arch's proposed changes to the pretrial scheduling order would allow the parties additional time to complete discovery and prepare for trial without unduly delaying trial. (Pl.'s Mem. in Supp. of Mot. to Amend Compl. at 6, 9, ECF 53.) Moreover, Arch filed its motion to amend its complaint as soon as it learned of new facts and only six months after the original complaint. (*Id*. at 6.) Finally, there is no indication that Arch's proposed claims are futile or that they are brought in bad faith. Defendants have not offered a reason to overcome the Ninth Circuit's preference towards amending complaints; their sole argument is that they do not have the resources to litigate the claims. (Defs.' Joint Mem. in Supp. of Opp'n of Mot. to Amend Compl. at 4, ECF 60.) Prejudice to a defendant from the addition of new claims to a complaint generally is found only when the plaintiff has substantially delayed requesting leave to amend. *E.g., United States v. Pend Oreille Public Utility Dist. No. 1*, 28 F.3d 1544, 1552–53 (9th Cir.1994); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). The motion to amend is granted.

III. Motion for Preliminary Injunction

Arch seeks a preliminary injunction freezing the assets of Sierra and Indemnitors. As provided by Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction to preserve the relative position of the parties pending a trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The party seeking injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008); *Munaf v. Green*, 553 U.S. 674, 689-90 (2008).

/////

Before the *Winter* decision, the Ninth Circuit employed a "sliding scale" or "serious question" test, which allowed a court to balance the elements of the test "so that a stronger showing of one element may offset a weaker showing of another." *See Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Recently, the Circuit found that its sliding scale test survived *Winter:* a court may issue a preliminary injunction when a plaintiff raises serious questions going to the merits and demonstrates that the balance of hardships tips sharply in his favor, so long as the court also considers the remaining two prongs of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

A. Authority to Issue Preliminary Injunction Freezing Assets

A court may not issue a preliminary injunction freezing a party's assets unless the party seeking the injunction has stated a cause of action for equitable relief. *In re Focus Media*, *Inc.*, 387 F.3d 1077, 1084-85 (9th Cir. 2004); *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999). A creditor's demand for money damages based on a claim for breach of contract alone does not allow the court to issue a preliminary injunction restraining the defendant's assets. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). Additionally, granting a preliminary injunction is only appropriate "to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." *In re Focus Media Inc.*, 387 F.3d at 1085 (quoting *Oncology Assocs.*, 198 F.3d at 496-97).

The court finds that it has authority here to grant a preliminary injunction freezing defendants' assets based on Arch's claims. Arch's original complaint and proposed FAC include a cause of action for promissory estoppel and a request for specific performance, both based in equity. *Heine v. Bd. of Levee Com'rs*, 86 U.S. 655, 659 (1873) (doctrine of specific performance is an "acknowledged ground" of equity jurisdiction); *San Diego City Firefighters, Local 145, AFL-CIO v. Bd. of Admin. of San Diego City Employees' Ret. Sys.*, 206 Cal. App. 4th 594, 618

7

Case 2:12-cv-00617-KJM-DB   Document 71   Filed 11/13/12   Page 8 of 11

(2012) ("Promissory estoppel is a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." (citations omitted)). Additionally, Arch requests injunctive relief in its complaint, the same type of relief it seeks through its present request for preliminary injunction. *See In re Focus Media*, 387 F.3d at 1085.

B. Likelihood of Success on the Merits

On the record before the court, Arch has shown a likelihood of prevailing on the merits of its claim for breach of contract against Sierra and Indemnitors. Arch has provided facts showing that defendants did not meet their obligations under the GIA. As defendants have not provided any facts contradicting Arch's claims, this prong of the preliminary injunction test is met. *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1313 (11th Cir. 1998) (upholding district court's grant of preliminary injunction where court had accepted plaintiff's version of the facts, as defendants had failed to dispute them); *Williams v. San Francisco Unified Sch. Dist.*, 340 F. Supp. 438, 442 (N.D. Cal. 1972) (explaining the court must accept the statements in unopposed affidavits submitted in support of preliminary injunction as true).

C. Irreparable Harm

Arch also has demonstrated a likelihood of irreparable harm in the absence of a preliminary injunction, as it has shown it is probable "there [is] substantial danger that the defendants would transfer or conceal [Arch's] funds, resulting in denying recovery to [Arch]." *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467, 1480 (9th Cir. 1994). Arch has presented evidence supporting an inference that Sierra and DCR have concealed funds received from CalTrans and transferred those funds to Weir, Scarola, Lanza and Hust, rather than paying Arch as required by the terms of the GIA. Again, defendants have not disputed that the funds were not transferred as Arch alleges, nor explained how their use of the payments from CalTrans was legitimate.

/////

D. Balance of Equities and the Public Interest

The court must weigh the anticipated hardships to the parties in considering whether to grant Arch's request for a preliminary injunction. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Here, in the absence of any evidence to the contrary, the danger that Arch would not be able to recover on its claims against defendants is greater than the harm to defendants from freezing their assets before trial. Finally, as the requested injunction will only affect the parties, "the public interest [is] . . . a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Id.* at 1138-39.

IV. Temporary Restraining Order

Arch additionally requests that the court issue a temporary restraining order preventing Scarola individually, as well as Kindell, Lanza and Hust (collectively, "new defendants") from dissipating or concealing any assets they received from Sierra or Indemnitors. A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). In determining whether to issue a temporary restraining order, a court applies the factors that guide the evaluation of a request for preliminary injunctive relief: whether the moving party "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in [its] favor, and . . . an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

/////

A.  Authority to Issue Temporary Restraining Order

As explained above, Arch must state a cause in equity against the new defendants for the court to have the authority to issue injunctive relief.  As Arch has stated a claim seeking injunctive relief under the Uniform Fraudulent Transfer Act, the court may issue a temporary restraining order.  *See* Cal. Civ. Code § 3949.07; *Kremen v. Cohen*, No. 5:11-CV-05411-LHK, 2011 WL 6113198, at *4 (N.D. Cal. Dec. 7, 2011) (granting a temporary restraining order based on claims under UFTA).

B.  Likelihood of Success on the Merits

Arch argues that its evidence showing the new defendants received funds from Sierra and Indemnitors after the filing of the original complaint demonstrates a likelihood of success on its UFTA claims against these defendants.  (Mot. for Preliminary Inj. & TRO at 7-8, ECF 58-1)  However, Arch has not sufficiently explained how these facts establish an UFTA violation.  Arch has not demonstrated a likelihood of success on the merits.

Accordingly, IT IS HEREBY ORDERED that:

1.  Arch's Motion for Leave to File a First Amended Complaint and Alter Dates in Pretrial Scheduling Order is GRANTED.  Arch is directed to promptly file on the docket the proposed complaint accompanying its motion.  The court will issue a separate revised Pretrial Scheduling Order.

2.  Arch's Motion for Temporary Restraining Order is DENIED, without prejudice.

3.  Arch's Motion for Preliminary Injunction is GRANTED as follows:

Pending trial of this matter, defendants Sierra Equipment Rental, Inc. Melvin R. Weir, and Carolyn S. Scarola, as Trustee of the Dry Creek Ranches Trust, are barred from withdrawing, transferring, assigning, conveying, pledging, hypothecating, dissipating, mortgaging, or disposing of in any manner the funds in their possession and any funds, assets, realty or personalty, tangible or intangible, choses in action or other property.  This order shall

1 have no effect on property of natural person Weir that is otherwise exempt from enforcement of
2 a money judgment pursuant to California Code of Civil Procedure section 703.010 *et seq.*
3       This order shall take effect immediately.
4       IT IS SO ORDERED.
5 DATED: November 13, 2012.

                                      UNITED STATES DISTRICT JUDGE