UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCH INSURANCE COMPANY, a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>SIERRA EQUIPMENT RENTAL, INC., a California corporation; MELVIN R. WEIR, an individual; CAROLYN S. SCAROLA, as trustee of the Dry Creek Ranches Trust; CAROLYN S. SCAROLA, an individual,<br><br>Defendants. | No. 2:12-cv-00617-KJM-KJN<br><br><br>ORDER |

This matter is before the court on defendant Karrie Kindell's ("Ms. Kindell") motion to dismiss. (Def.'s Mot. Dismiss, ECF No. 113.) Plaintiff Arch Insurance Company ("Arch") opposes the motion. (Pl.'s Opp'n, ECF No. 123.) The court held a hearing on January 16, 2015, at which Patrick Kirby appeared for Arch, Andrew Wiener appeared telephonically for Ms. Kindell, and Chris Kuhner appeared telephonically on behalf of the trustee Carolyn S. Scarola. As explained below, the court GRANTS in part and DENIES in part the motion.

I.   BACKGROUND

Arch's claims arise from its issuance of surety bonds to Sierra Equipment Rental, Inc. ("Sierra") for Sierra's contracted construction projects for the State of California Department

of Transportation ("CalTrans") and Tutor-Saliba between December 2009 and January 2011. (First Am. Compl. ("Compl."), ECF No. 68 ¶¶ 12–13.) Defendant Ms. Kindell was Sierra's president. (*Id.* ¶ 157.) Arch alleges Sierra executed a General Indemnity Agreement ("GIA") promising to indemnify Arch against any losses that Arch might incur from issuing the bonds. (*Id.* ¶ 16.) On January 31, 2012, Sierra notified Arch that it needed $3 million in financial assistance after defaulting on its project for CalTrans. (*Id.* ¶¶ 22–23.) In turn, Arch requested that Sierra and the other Indemnitors deposit $1,461,918.83 in collateral, the amount Arch estimated it had received in claims; discharge Arch from the bonds; and allow Arch to inspect books and records, consistent with the terms of the GIA. (*Id.* ¶ 24.) Arch asserts that Sierra and the Indemnitors have not complied with these obligations. (*Id.* ¶¶ 31–33.)

The original complaint did not name Ms. Kindell as a defendant. (*See* ECF No. 2.) Arch's first amended complaint, the operative complaint, added Ms. Kindell as a party and alleges the following claims against her: (1) conspiracy to convert; (2) violation of the Uniform Fraudulent Transfer Act ("UFTA"), California Civil Code § 3439, *et seq.*; and (3) conspiracy to violate the UFTA. (ECF No. 68.) Ms. Kindell now moves to dismiss all three claims. (ECF No. 113 at 1–2.) Arch opposes Ms. Kindell's motion (ECF No. 123), and Ms. Kindell has replied (ECF No. 124).

II.   STANDARD

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)). Because jurisdiction in this case is based on diversity of citizenship, California substantive law applies to Arch's state-law claims and federal procedural law governs the procedural aspects of Ms. Kindell's motion to dismiss. *Freund*, 347 F.3d at 761.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

/////

2

under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

III.    DISCUSSION

Ms. Kindell argues Arch's claim for civil conspiracy to convert cannot proceed because "(1) Sierra's administration of its own money cannot be a basis of a conversion claim; (2) [Arch] had no possessory or ownership right to the money allegedly converted; and (3) "[a]n employee cannot conspire with her employer to convert corporate funds." (ECF No. 113 at 2.)

Ms. Kindell argues Arch's claims for violation of the UFTA and conspiracy to violate the UFTA cannot proceed because "(1) [a] corporate debtor's employee cannot be held

3

liable for the corporation's alleged UFTA violation; (2) [t]he complained of act does not constitute a violation of the UFTA as a matter of law; (3) [l]acking any independent statutory duty to [p]laintiff under the UFTA, this [d]efendant cannot be held liable for conspiring to violate the UFTA; and (4) [t]he First Amended Complaint does not allege facts sufficient to establish a UFTA violation." (*Id.*)

The court addresses each claim in turn.

A. <u>Civil Conspiracy to Convert</u>

Civil conspiracy is not an independent claim; rather, a plaintiff must plead an underlying civil wrong along with conspiracy allegations. *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006). "It is a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 211–12 (2011) (internal quotation marks omitted). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." *Id.* at 212 (internal quotation marks omitted). "The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *Id.*

Here, the first and third elements are satisfied. Specifically, Arch alleges Ms. Kindell knew of Sierra and Indemnitor's "plan to divert and defalcate" the subject funds from Arch. (Compl. ¶ 92.) With that knowledge, Ms. Kindell entered into an agreement with Sierra and the other Indemnitors to convert the subject funds by "diversion and defalcation" on or before September 7, 2011. (*Id.* ¶¶ 93–94.) As an example, Ms. Kindell "signed and issued a check payable to" one of the other Indemnitors "on December 6, 2011 in the amount of $300,000." (*Id.* ¶ 95. Treating these allegations as true, the court finds them sufficient to satisfy the first and third elements of a conspiracy claim.

/////

4

However, the second element, a wrongful act committed pursuant to the agreement, is not satisfied. The underlying tort on which Arch bases its conspiracy claim is the tort of conversion under California law. Generally, conversion is described as a wrongful exercise of dominion over another's personal property. *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007). The fundamental elements of conversion are: (1) plaintiff's ownership or right to possession of personal property; (2) defendant's disposition of the property in a manner inconsistent with plaintiff's property rights; and (3) damages. *Id.*

Ms. Kindell argues that because "revenue received by Sierra as the general contractor on the project cannot plausibly be construed as funds held in trust for Arch," in that Sierra may use that money as it "deems appropriate," "the manner in which Sierra handles that money cannot be a premise for a claim of conversion." (ECF No. 113-2 at 3.) "Simply put, a person cannot convert one's own money," Ms. Kindell concludes. (*Id.*) Arch counters, "the GIA expressly created a trust in favor of Arch from any funds Sierra received under the bonded contracts and explicitly recognized Arch's possession of those funds . . . ." (ECF No. 123 at 3.)

It is evident that the only contested element of conversion is whether Arch had a recognized interest in the subject funds for purposes of a conversion claim under California law. The allegations in the first amended complaint are insufficient to satisfy that element. For example, the allegations do not explain how the GIA created a trust in favor of Arch, with Sierra as the trustee; the allegations do not explain that Sierra had a duty to hold the subject funds, the alleged trust res, for Arch's benefit. Because the allegations of the first amended complaint are insufficient to state an underlying claim for conversion, the court GRANTS Ms. Kindell's motion to dismiss Arch's conspiracy to convert claim. However, the court GRANTS Arch leave to amend if it can do so consonant with Rule 11.

B.     Violations of the UFTA

Ms. Kindell argues because there are no allegations that she possessed Sierra's assets, Arch cannot seek a remedy under the UFTA from her. (ECF No. 113-2 at 5–6.) Arch counters the UFTA permits recovery "even against a party that is not a debtor or transferee." (ECF No. 123 at 8.)

"A fraudulent conveyance claim is set forth in the [UFTA], which is codified in Civil Code section 3439 *et seq.*" *Kirkeby v. Superior Court of Orange Cnty.*, 33 Cal. 4th 642, 648 (2004). "A fraudulent conveyance under the UFTA involves a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 829 (2005) (internal quotation marks omitted). "A transfer under the UFTA is defined as every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset . . . , and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Kirkeby*, 33 Cal. 4th at 648 (internal quotation marks omitted, alteration in original). A transfer of assets made by a debtor is fraudulent as to a creditor if the debtor made the transfer

> (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due.

*Id.*

Here, Arch alleges Ms. Kindell transferred the funds at issue from Sierra, the debtor, to Melvin Weir, the transferee. (Compl. ¶ 137.) Ms. Kindell contends because she is only an employee of Sierra and transferred the subject funds "as part of her corporate authority," Arch's claim is against Sierra and not against her. (ECF No. 113-2 at 5.) The court finds Ms. Kindell's argument unpersuasive.

A judgment may be entered against a person for whose benefit the transfer was made. *Qwest Commc'ns Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1190 (S.D. Cal. 2003) ("[J]udgment may be entered against: (1) the first transferee of the asset; (2) a subsequent transferee who did not take for value in good faith; or (3) the person *for whose benefit* the transfer was made." (emphasis in original)). While in most cases "the only likely beneficiaries of a fraudulent transfer are the debtor who avoids his creditors and the transferee who receives the assets," it is "not so in all cases, . . . especially where, as here, the debtor is a corporation." *Id.* at 1191. Here, Arch alleges Ms. Kindell conspired, along with the other Indemnitors, to defraud

1    Arch of the funds at issue.  (ECF No. 68 ¶ 137.)  For example, on December 6, 2011, Sierra

2    deposited $465,355.15 into its Bank of Marin account for Arch's benefit.  (*Id.*)  Yet on the same

3    day, Ms. Kindell, as Sierra's president, allegedly transferred $300,000.00 to Mr. Weir personally,

4    in furtherance of that conspiracy.  (*Id.*)  Ms. Kindell transferred those funds to defraud Arch.  (Id.

5    ¶ 138.)  Because Ms. Kindell, along with others, conspired to defraud Arch and because she

6    transferred the funds in furtherance of that conspiracy, she stands to benefit from the allegedly

7    fraudulent transfer.  Viewing all of the factual allegations in the first amended complaint as true,

8    together with all reasonable inferences, the court finds Arch's allegations sufficient to survive the

9    motion to dismiss.

10              Additionally, the UFTA "includes a broad remedial provision, Civil Code

11   § 3439.07(a)(3)(C), which permits a court, [s]ubject to applicable principles of equity, to award

12   [a]ny other relief the circumstances may require." *Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1087

13   (S.D. Cal. 1998).  Ms. Kindell's motion "has not established that no set of facts could state a

14   claim for relief in light of . . . [the UFTA's] broad remedial provision." *Id.* (internal quotations

15   omitted, alterations in original).

16              Finally, Ms. Kindell argues there are no facts showing "the alleged transfer was

17   made without receipt by the debtor of reasonably equivalent consideration, which is necessary to

18   maintain a UFTA claim."  (ECF No. 113-2 at 6.)  Arch counters that although it "actually does

19   plead the lack of reasonably equivalent value . . . , this is not a strict requirement."  (ECF No. 123

20   at 10.)  Because Arch does expressly allege Sierra "did not receive reasonably equivalent value in

21   exchange for the transfer to Weir" (Compl. ¶ 139), Ms. Kindell's argument is unavailing.

22       C.    Conspiracy to Violate the UFTA

23              Ms. Kindell argues she "cannot be held liable for a conspiracy to violate the

24   [UFTA] when the [UFTA] does not place any duty on [her]."  (ECF No. 113-2 at 6–7.)  In

25   addition, she reasons she is shielded by the agent-immunity rule.  (*Id.* at 7.)  Arch counters there

26   is no duty requirement for a conspiracy claim and, even if there is, Ms. Kindell had a duty not to

27   commit fraud on Arch.  (ECF No. 123 at 11.)  As to Ms. Kindell's agent-immunity rule, Arch

28   /////

7

claims the rule does not apply because Ms. Kindell participated in the alleged tortious conduct. (*Id.*)

As noted above, California recognizes civil liability for conspiracy to commit a tort. *See Taylor v. S & M Lamp Co.*, 190 Cal. App. 2d 700, 706 (1961). A claim under the UFTA can provide the underlying tortious conduct for a conspiracy claim. *Filip*, 129 Cal. App. 4th at 837 (noting tortious conduct occurs when property is fraudulently transferred). "[T]here can be liability for conspiring to commit an intentional tort even *absent* any duty." *Fuller v. First Franklin Fin. Corp.*, 216 Cal. App. 4th 955, 967 (2013) (emphasis in original). A president of a debtor corporation has a duty not to commit a fraud upon a creditor. *Qwest Commc'ns Corp.*, 278 F. Supp. 2d at 1193. "Indeed, *everyone* owes a duty not to commit an intentional tort against *anyone*." *Id.* at 1193 n.4 (emphases in original).

Here, Arch has alleged that Ms. Kindell, as Sierra's president, wrote a check to Melvin Weir personally for $300,000. (Compl. ¶ 157.) Arch further alleges that Ms. Kindell "was aware of Weir's plans to fraudulently transfer [the subject funds] . . . to avoid payment to Arch." (*Id.* ¶ 158.) Ms. Kindell "agreed to facilitate Indemnitors' transactions and carried out part of the transactions." (*Id.*) These allegations are sufficient to state a claim for conspiracy to violate the UFTA. *See Qwest Commc'ns Corp*., 278 F. Supp. 2d at 1193 (noting the president of a corporation "was legally capable of committing a fraudulent conveyance in violation of the UFTA").

Ms. Kindell's agent-immunity argument is unpersuasive. "It has long been the rule in California that [a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Black v. Bank of Am.*, 30 Cal. App. 4th 1, 4 (1994) (internal quotation marks omitted, alteration in original). "Specifically, the agent's immunity rule proscribes conspiracy claims between and against agents and their principals." *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003). However, an agent may be personally liable for conspiring with the corporation or others to commit tortious acts for the agent's own benefit, rather than on the corporation's behalf.

8

1  *See Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 46 (1989); *AccuImage Diagnostics Corp*, 260 F. Supp. 2d at 947 (noting "the agent's immunity rule does not apply in cases where directors and officers of a corporation directly order[], authorize[], or participate[] in the tortious conduct." (internal quotation marks omitted, alterations in original)).

Here, Arch alleges that in her capacity as Sierra's president, Ms. Kindell "wrote a check drawn on that account to Melvin Weir personally for $300,000." (*Id.*)  The first amended complaint further alleges Ms. Kindell knew about the alleged plan to divert the funds from Arch (*id.* ¶ 92), and entered into an agreement with the other Indemnitors to convert the subject funds to their use (*id.* ¶ 93).  The complaint further alleges as follows:

> Arch is informed and believes that the conspiracy was formed no later than payment application number 3 dated September 7, 2011 for the Lake County Highway 53 project when . . . Indemnitors and [Ms.] Kindell began diverting and defalcating [the subject funds] for the benefit of Indemnitors' and their other business interests.
>
> [A]s an example, [Ms.] Kindell knew of and facilitated the conspiracy to divert [the subject funds] when she signed and issued a check payable to Mr. Weir . . . on December 6, 2011 in the amount of $300,000.

(*Id.* ¶¶ 94–95.)

These allegations are sufficient to plead Ms. Kindell acted for her own benefit, rather than Sierra's, and that she participated in the alleged tortious conduct.  If Ms. Kindell participated in the conspiracy, and wrote the checks in furtherance of that conspiracy, as explained above, it can be inferred that she benefited from it because the conspiracy succeeded. *Cf. Moreland v. Ad Optimizers, LLC*, No. 13-00216, 2013 WL 3786311, at *4 (N.D. Cal. July 18, 2013) ("Absent allegations that an agent or employee was acting for his or her own benefit, a claim for civil conspiracy between an agent or employees and the corporate principal fails as a matter of law."); *AccuImage Diagnostics Corp*, 260 F. Supp. 2d at 955 ("Although the complaint alleges that [defendant] is the founder, President, Chief Executive Officer and Chairman of the Board of TeraRecon and that he engaged in the conduct detailed above, plaintiff nowhere alleges that [defendant] acted outside the scope of his authority as an officer of TeraRecon.").  Therefore, the agent-immunity rule is inapplicable.

## IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Defendant's motion to dismiss is GRANTED with leave to amend as to plaintiff's claim for civil conspiracy to convert.

2. Defendant's motion to dismiss is DENIED as to plaintiff's claim for violation of the UFTA and conspiracy to violate the UFTA.

IT IS SO ORDERED.

DATED: April 20, 2015.

_____
UNITED STATES DISTRICT JUDGE