1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARCH INSURANCE COMPANY,  a              No.  2:12-cv-00617-KJM-KJN
     Missouri corporation,
12
                      Plaintiff,
13                                            ORDER

14          v.

15   SIERRA EQUIPMENT RENTAL, INC., a
     California corporation; MELVIN R.
16   WEIR, an individual; CAROLYN S.
     SCAROLA, as trustee of the Dry Creek
17   Ranches Trust; CAROLYN S. SCAROLA,
     an individual,
18
                      Defendants.
19

20
                  This matter is before the court on the motion for partial summary judgment
21
     brought by plaintiff Arch Insurance Company (Arch), on its breach of contract claim against
22
     defendant Sierra Equipment Rental, Inc. (Sierra).  Mot., ECF No. 154.  The motion is unopposed,
23
     as Sierra is without counsel.[1]  The court held a hearing on May 6, 2016, and neither party
24
     appeared.  The court subsequently ordered the parties to show cause as to why they should not be
25
     sanctioned for failing to appear.  ECF No. 170.  Arch responded, indicating it did not appear at
26

27          _____
            [1] The court has previously addressed the problem posed by the lack of counsel for Sierra
28   given its corporate status.  ECF Nos. 163, 167.

                                               1

1  the hearing due to a calendaring error compounded with the confusion over Sierra's lack of

2  representation.  ECF No. 171.  For reasons explained below, the court GRANTS Arch's motion

3  for partial summary judgment and DISCHARGES the order to show cause as to Arch.  Sierra's

4  OSC is also DISCHARGED, given that nothing before the court indicates it could enforce any

5  monetary sanctions ordered, and in light of the adverse decision by the court against Sierra in the

6  resolution of this motion.

7  I.       FACTUAL BACKGROUND

8          In 2012, Sierra was a corporate entity in good standing with rights to conduct business in

9  California.  Stmt. of Undisputed Material Facts (SUMF) No. 23, ECF No. 155.  Previously, on

10  August 12, 2005, Sierra and others, including Melvin Weir and Carolyn Scarola (collectively,

11  "Indemnitors"), executed a General Indemnity Agreement (GIA) as partial consideration for

12  Arch's issuance of bonds covering Sierra's construction contracts for the two projects at issue

13  here: the Lake County and Shasta County Projects.  *See* SUMF Nos. 1, 2, 8; Pearce Decl., Ex. A,

14  ECF No. 157 at 12.[2]  In consideration of Arch's issuance of the payment and performance bonds,

15  the GIA requires Sierra to indemnify and hold Arch harmless for any "loss" as defined in the

16  GIA, which includes

17          Any and all liability, losses, costs, expenses, and fees of whatever
18          kind or nature, that [Arch] may sustain or incur as a result of
            executing any [b]ond or as a result of the failure of [Sierra] or
19          Indemnitors to perform or comply with [the GIA].  Loss includes
            but is not limited to: (a.) sums posted by [Arch] as a reserve for the
20          payment of potential losses and / or expenses, (b.) all costs and
            expenses incurred in connection with investigating, paying or
21          litigating any claim, and / or enforcing  [the GIA], including but not
            limited to legal fees and expenses, professional and consulting fees,
22          technical and expert witness fees and expenses, (c.) all accrued and
            unpaid premiums owing to [Arch] for the issuance, continuation or
23          renewal of any [b]onds or for any policy of insurance issued by
            [Arch] for [Sierra] or Indemnitors, (d.) funds advanced by [Arch] to
24          [Sierra] in connection with a Bonded Contract, and (e.) all other
            amounts payable to [Arch] according to the terms and conditions of
25          [the GIA] . . . .

26  SUMF No. 4; Pearson Decl., Ex. A at 9.

27  _____

28          [2] All page numbers in this order cite to the ECF pagination unless otherwise stated.

2

The GIA also requires the following:

4. Posting of Collateral – Indemnitors agree to deposit with [Arch], immediately upon demand by [Arch], an amount equal to the greater of (a.) the amount of any reserve established by [Arch] to cover any actual or potential Loss, or (b.) the amount of any claim or claims or other liabilities asserted against [Arch] as a result of issuing any [b]ond . . . .

. . .

8. Discharge of Surety – Upon the request of [Arch], [Sierra] and Indemnitors will procure the discharge of [Arch] from any [b]ond, and all liability arising therefrom, and provide evidence to [Arch] regarding the same.

9. Access to Books & Records – [Arch], including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of [Sierra] and Indemnitors . . . .

SUMF Nos. 4, 5, 6; Pearson Decl., Ex. A at 9–10.  Lastly, the GIA also provides that Sierra and the Indemnitors agree to accept vouchers or other evidence of payments made by Arch for any Loss sustained or incurred by reason of having executed any Bond.  SUMF No. 26; Pearson Decl., Ex. A at 9.

In reliance on Sierra and Indemnitors' representations in the GIA, Arch issued bonds guaranteeing Sierra's performance of two contracts, and Sierra's payments to subcontractors and suppliers in connection with those contracts: (1) Sierra's contract with the California Department of Transportation (CalTrans) for construction on Route 53 in Lake County (the Lake County Project) (payment and performance bonds, with penal sums of $11,311,521.95 and $5,655,768.98, respectively to cover alternative performance of the contract if needed); and (2) Sierra's subcontract with Tutor-Saliba Corporation (Tutor) for construction on Antler's Bridge located in Shasta County (the Shasta County Project) (payment and performance bonds, with a penal sum of $6,532,874.00 to cover alternative performance of the subcontract if needed). SUMF Nos. 8–9.  The bonds are collectively referred to as the "Bonds" in this order.

By January 2012, Sierra had failed to pay a number of subcontractors on the Lake County Project, resulting in numerous claims on the Bonds for that project.  SUMF No. 10.  At

3

the same time, Sierra requested financial assistance from Arch.  SUMF No. 11.  In mid-February

2012, Arch demanded that Sierra fulfill its obligations under the GIA, including exonerating Arch

from potential liabilities, indemnifying Arch, and providing collateral in the amount of

$1,461,918.83, the total amount in claims asserted against Arch's Bonds at the time.  SUMF No.

15.  However, by the end of February 2012, Sierra defaulted not only on its contract for the Lake

County Project but also for the Shasta County Project contract, resulting in claims against both

Projects' Bonds by the Project owners, CalTrans and Tutor, and $6,737,855.98 in losses to Arch

as of January 12, 2016.  SUMF No. 10–13; Pearce Decl. ¶ 9, Ex. E.  Tutor, with whom Sierra

subcontracted for the Shasta County Project, filed a civil action against both Sierra and Arch as a

result of the default, alleging damages in excess of $6,532,874.00.  *Id.* at 13–14.  At the time Arch

filed its motion, the civil action was pending in Los Angeles Superior Court.  *Id.*

Since 2012 Arch has made numerous requests to inspect Sierra's books and

records.  SUMF No. 25.  Sierra has refused, and Arch retained legal counsel to gain access.  *Id.*

Arch has recovered $2,821,915.45 in credits against its losses under the Bonds.  SUMF No. 27.

As of January 12, 2016, Sierra's corporate status with the California Secretary of State was

forfeited, meaning Sierra has not filed its franchise tax return or paid the tax due thereunder.

SUMF No. 28; Van Ornum Decl. ¶ 5 & Ex. B, ECF No. 156; *see also Business Search – Field*

*Descriptions and Status Definition*, California Secretary of State web page, available at

http://www.sos.ca.gov/business-programs/business-entities/cbs-field-status-definitions/ (last

visited May 2, 2016 16:17GMT).  Arch's counsel has attempted to secure a stipulated judgment

from Sierra but has been unsuccessful.

II.    PROCEDURAL HISTORY

Arch filed the complaint in this action on March 9, 2012.  Compl., ECF No. 2.  On

May 18, 2012, the court granted Arch's ex parte application for a right to attach order and writ of

attachment against Sierra and the Indemnitors in the amount of $1,661,980 based on California

Code of Civil Procedure section 487.010.  *See* May 2012 Order, ECF No. 36.  Subsequently on

November 13, 2012, the court granted Arch's motions for leave to amend the complaint and for a

preliminary injunction freezing the assets of Sierra and Indemnitors.  *See* November 2012 Order,

1   ECF No. 71.  In the same order, the court denied Arch's request for a temporary restraining order

2   to prevent Scarola individually, among other defendants who have since been dismissed from the

3   case, from dissipating or concealing any assets she received from Sierra or the Indemnitors.  *Id*. at

4   9–11.

5            The First Amended Complaint alleges a total of eleven claims for relief, some

6   against all defendants, and some against only certain defendants.  *See generally* First Am. Compl.

7   (FAC), ECF No. 68.  Arch moves for summary judgment only on the first cause of action: breach

8   of contract against Sierra and the Indemnitors.  FAC ¶¶ 36–48.

9            As noted, Arch indicated it did not appear at hearing on the motion due to a

10  calendaring error compounded with the confusion over Sierra's lack of representation.  ECF No.

11  171.  Given Arch's response to the order to show cause and the court's interest in reaching the

12  merits of the case, the order to show cause against Arch is DISCHARGED.  Sierra's OSC is also

13  DISCHARGED.

14  III.    SUMMARY JUDGEMENT

15        A.    Legal Standard

16            As noted, Arch's motion for partial summary judgment is unopposed.  While "[a]

17  district court may not grant a motion for summary judgment solely because the opposing party

18  has failed to file an opposition," *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir.

19  1994), "[t]he court may . . . grant an unopposed motion for summary judgment if the movant's

20  papers are themselves sufficient to support the motion and do not on their face reveal a genuine

21  issue of material fact."  *United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th

22  Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without

23  consideration of whether motion and supporting papers satisfy Federal Rule of Civil Procedure

24  56).

25            The court does not weigh evidence or assess the credibility of witnesses; rather, it

26  determines which facts are undisputed, then draws all inferences and views all evidence in the

27  light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

28  (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

5

1    "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

2    moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First*

3    *Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

4         The moving party bears the initial burden of "informing the district court of the

5    basis for its motion, and identifying those portions of [the record] which it believes demonstrate

6    the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

7    (1986). "Only disputes over facts that might affect the outcome of the suit under the governing

8    law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

9         B.    Breach of Contract

10        The surety contracts of the kind at issue here are construed according to the same

11   rules that govern interpretation of all contracts. *Pacific Employers Ins. Co. v. City of Berkeley*,

12   158 Cal. App. 3d 145, 150 (1984). To prevail on a breach of contract claim under California law,

13   which applies in this case, a plaintiff must prove (1) the existence of a contract, (2) the plaintiff's

14   performance of its obligations under the contract or excuse for nonperformance, (3) the

15   defendant's breach, and (4) resulting damage to the plaintiff. *Richman v. Hartley*, 224 Cal. App.

16   4th 1182, 1186 (2014). The court looks first at whether a contract existed between Arch and

17   Sierra.

18        1.    Existence of a Contract

19        In California, to prove the existence of a contract, a plaintiff must show: (a) parties

20   capable of contracting, (2) the parties' consent, (3) a lawful object, and (4) consideration. *See*

21   Cal. Civ. Code § 1550. "Every contract requires the mutual assent or consent of the parties.*"*

22   *Meyer v. Benk*o, 55 Cal. App. 3d 937, 942 (1976) (citing Cal. Civ. Code §§ 1550, 1565). Consent

23   may be manifested in several ways—in writing, through speech or by conduct—and "may be

24   implied through action or inaction." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir.

25   2014). Ultimately, "[t]he existence of mutual consent is determined by objective rather than

26   subjective criteria, the test being what the outward manifestations of consent would lead a

27   reasonable person to believe." *Meyer*, 55 Cal. App. 3d at 943. Parties consent when they "all

28

6

1   agree upon the same thing in the same sense." Cal. Civ. Code § 1580; *Bustamante v. Intuit, Inc.*,

2   141 Cal. App. 4th 199, 209 (2006).

3              First, a corporation has the power to enter into contracts in conducting its

4   activities, and Sierra, at the time of contract was a corporate entity in good standing with the

5   ability to conduct business lawfully in California. Cal. Corp. Code § 9140(i); *see also Bates v.*

6   *Coronado Beach Co.*, 109 Cal. 160, 162 (1895) (corporation has the power to enter into any

7   contract essential to the transaction of its ordinary affairs). Second, the GIA was a six-page

8   document, including the signature pages, with each provision clearly titled and numbered. *See*

9   *generally* Pearce Decl., Ex. A. Sierra signed the GIA, and the signature was witnessed. *Id.* at 12–

10  15. Objectively, a reasonable person would find that Sierra consented to the GIA. *Cf. Silicon*

11  *Valley Self Direct, LLC v. Paychex, Inc.*, No. 14-1055, 2015 WL 4452373, at *3 (N.D. Cal. July

12  20, 2015) (mutual consent is determined by objective outward manifestation); *see also Marin*

13  *Storage & Trucking, Inc. v. Benco Contracting & Eng'g*, 89 Cal. App. 4th 1042, 1049 (2001)

14  ("ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all

15  its terms," and "[a] party cannot avoid the terms of a contract on the ground that he or she failed

16  to read it before signing."). Third, California recognizes surety contracts as lawful instruments.

17  *Pacific Employers Ins. Co.*, 158 Cal. App. 3d at 150. Lastly, in return for Arch's issuance of the

18  Bonds covering Sierra's construction contracts, Sierra agreed to indemnify and hold Arch

19  harmless for certain losses as defined by the GIA, post collateral, procure Arch's discharge from

20  any Bond issued under the GIA, and provide Arch with access to its financial books and records

21  if Arch requested. SUMF Nos. 1–6; Pearce Decl., Ex. A at 9–10. In other words, the GIA was

22  supported by consideration. *See Steiner v. Thexton*, 48 Cal. 4th 411, 420-21 (2010) (for

23  consideration to be valid, recipient of promise must provide bargained-for benefit or suffer

24  prejudice in exchange for promise).

25              The court finds as a matter of law that a contract existed between Arch and Sierra.

26              2.    Plaintiff's Performance or Excuse from Non-Performance

27              The court next looks at whether Arch performed or was excused from non-

28  performance. Here, Sierra agreed to the requirements in the GIA as consideration in exchange for

Arch's issuance of performance and payment bonds for Sierra's construction projects.  Arch

issued the Bonds covering Sierra's contracts for both the Lake County and Shasta County

Projects.  SUMF Nos. 8–9.  Accordingly, the court finds that as a matter of law, Arch has

performed its obligation under the GIA.  *Cf. American Express, F.S.B., Federal Sav. Bank v.*

*Wright*, No. 11-4492, 2012 WL 2343674, at *2 (N.D. Cal. June 20, 2012) (summary judgment

granted where no genuine dispute of material fact exists as to whether plaintiff performed).

3.    Defendants' Breach

The third element of a breach of contract claim is the defendant's breach of the

contract, or in this case, Sierra's breach of the GIA.  Arch argues Sierra breached its obligation to

(1) indemnify, (2) provide collateral, (3) exonerate Arch, and (4) provide access to its books and

records.  Mot. at 8–10.

Here, in terms of indemnification, Sierra agreed in the GIA to indemnify and hold

Arch harmless for any "loss" as defined in the agreement, which includes, "Any and all liability,

losses, costs, expenses, and fees of whatever kind or nature, that [Arch] may sustain or incur as a

result of executing any [b]ond or as a result of the failure of [Sierra] or Indemnitors to perform or

comply with [the GIA]."  SUMF No. 4; Pearson Decl., Ex. A at 9.  Sierra has yet to indemnify

Arch for its defense costs arising from the claims asserted against the Bonds, and Arch's

payments on the Bonds to CalTrans, subcontractors, materialmen, and laborers.  SUMF Nos. 12–

22.

With respect to providing collateral, Sierra agreed,

> [T]o deposit with [Arch], immediately upon demand by [Arch], an
> amount equal to the greater of (a.) the amount of any reserve
> established by [Arch] to cover any actual or potential Loss, or
> (b.) the amount of any claim or claims or other liabilities asserted
> against [Arch] as a result of issuing any [b]ond . . . .

SUMF No. 4; Pearson Decl., Ex. A at 9.  On February 17, 2012, Arch demanded that Sierra post

$1,461,918.83 in collateral, the total amount in claims asserted against Arch's Bonds at the time.

SUMF No. 15.  Sierra did not deposit the requested collateral.  SUMF No. 20.  Sierra also did not

deposit any collateral for Tutor's claim against Arch in connection with the Shasta County

project, in the sum of $6,532,874.00 after Arch demanded it do so.  SUMF No. 9, 13–14, 15.  As

8

1    discussed above, Tutor has filed a civil action against Arch, and in connection with that action, to

2    date, Sierra has not "procure[d] the discharge of [Arch] from any Bond, and all liability arising

3    therefrom, and provide[d] evidence to [Arch] regarding same."  SUMF No. 5; Pearson Decl., Ex.

4    A at 10.

5            Finally, Sierra agreed at the time of contracting to provide access to its books and

6    records under the GIA at Arch's request.  SUMF No. 6; Pearson Decl., Ex. A at 10.  Since 2012

7    Arch has made numerous requests to inspect Sierra's books and records, in vain.  SUMF No. 25.

8    Arch has had to retain legal counsel to advance its interests in the face of Sierra's refusal.  *Id.*

9            As a matter of law, the court finds Sierra has breached its obligations with respect

10   to indemnification, collateralization, exoneration, and provision of access to books and records.

11           4.    <u>Damages</u>

12           Once a breach of contract has been shown, California law applies a liberal rule in

13   allowing a court or jury to determine the amount of damages.  *Hunt Foods v. Phillips*, 248 F.2d

14   23, 33 (9th Cir. 1957); *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 486–87 (1955).

15   California law also limits contract damages to damages reasonably within the contemplation of

16   the parties as a probable result of a breach at the time the contract was formed.  *Brandon & Tibbs*

17   *v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 457 (1990).  The California Civil

18   Code provides that "[n]o damages can be recovered for a breach of contract which are not clearly

19   ascertainable in both their nature and origin."  Cal. Civ. Code § 3301.

20           Here, the GIA provides that Sierra, among others, "agree[s] to indemnify and hold

21   harmless [Arch] for any and all Loss sustained or incurred by reason of having executed any and

22   all Bonds."  SUMF No. 3; Pearce Decl., Ex. A at 9.  As a result, Arch can recover, based on

23   Sierra's breach of contract, the $6,737,855.98 it incurred in losses paid for claims on the Bonds,

24   loss adjustment expenses, consulting fees, attorney's fees and related costs, less the

25   $2,821,915.45 recovered from other Indemnitors or defendants since the beginning of this action,

26   for a total of $3,915,940.53.  SUMF No. 10–13; Pearce Decl. ¶ 9, Ex. E.  However, with respect

27   to the additional $6,532,874.00 Arch may suffer as a result of Tutor's pending civil action arising

28   from Sierra's breach of contract, that amount is not currently recoverable, because it has not been

1  finally determined. *See StreamCast Networks, Inc. v. IBIS LLC*, No. 05-04239, 2006 WL

2  5720345, at *4 (C.D. Cal. 2006) (Where the underlying action to a claim is not final and a breach

3  of contract claim will not settle all of the contractual issues on which plaintiff seeks relief,

4  declaratory relief is appropriate).

5  IV.    <u>CONCLUSION</u>

6          Arch's motion for summary judgment is GRANTED.  Arch is awarded

7  $3,915,940.53 in damages.

8          The order to show cause issued on May 12, 2016 is DISCHARGED as to Arch and

9  Sierra.

10         IT IS SO ORDERED.

11  DATED:  July 25, 2016.

12

13  _____

14  UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28